DOCUMENT

I hereby attest and certify on JAN 0 9 2001
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEPUTY CLERK

COPY

FILED
CLERK, U.S DISTRICT COURT

JAN 2 2002

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

1105

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### February 2001 Grand Jury

1:06CR585

JUDGE POLSTER

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>KHALIL MOHAMMED,<br>  aka "Abu Ashraf,"<br>  aka "Mustafa K. Mohamad,"<br>  aka "Khalil Al-Tarifi,"<br>  aka "Khalil Ashoor,"<br>NIDAL HAMAYEL,<br>  aka "Abu Abed,"<br>  aka "Nidal Abdelrahman,"<br>MOHAMMAD KAHALAH,<br>  aka "Abu Affoun,"<br>  aka "Abu Hamaid,"<br>  aka "Mohammad Rashid<br>    Tabel Kahalah,"<br>  aka "Abu Ahmad,"<br>RAOF ISA,<br>  aka "Abu Rafik,"<br>  aka "Roaf Isa,"<br>HASHEM HAMIDEH,<br>  aka "Abu Yasser,"<br>  aka "Hashem Hamedah,"<br>MOHAMMAD SHABIB,<br>  aka "Khamis,"<br>OSAMA RAYAN,<br>  aka "Abu Ghassan,"<br>AHMAD JARIS,<br>  aka "Ahmad Younis," | CR NO. 02- 0003<br><br>I N D I C T M E N T<br><br>[21 U.S.C. §§ 846, 841(a)(1),<br>841(c)(2); 18 U.S.C. § 2:<br>Conspiracy to (1) Aid and Abet<br>the Manufacture of<br>Methamphetamine and (2) Possess<br>Pseudoephedrine Knowing or<br>Having Reasonable Cause to<br>Believe That It Would Be Used<br>to Manufacture Methamphetamine;<br>21 U.S.C. § 841(c)(2):<br>Possession of Pseudoephedrine<br>Knowing or Having Reasonable<br>Cause to Believe That It Would<br>Be Used to Manufacture<br>Methamphetamine; 21 U.S.C. §§<br>846; 841(a)(1): Attempt to<br>Manufacture Methamphetamine] |

#1 guy →

NABHAN ISA,
aka "Mohammad Isa,"
aka "Abu Karam,"
NASSER HATU,
STEPHEN ALMASRI,
aka "Abu Yazen,"
aka "Suhail,"
FERAS SALLAL,
ADNAN ISA,
aka "Adnan Mohammad Issa,"
AKRAM OMAR,
MOHAMMAD ALASOUD,
ALFONSO PELAYO,
aka "Neal,"
RASHEED AZIZ,
aka "Rasheed Abdel-Aziz,"
aka "Rasheed Farouk,"
aka "Rasheed Farouq,"
MAHMOUD KHATTAB,
aka "Abu Lutfi,"
aka "Naseer Khattab,"
KHALED SHOUKHAH,
TAWFIQ MUSITEF,
aka "Tony Musitef,"
AMJAD AYEH,
aka "Amjad Abdelkarim,"
aka "Khalid,"
OMAR KHALIL,
aka "Omar Hussein Khalil,"
RAHEEF SANAM,
MOHAMMAD ESES,
RIGOBERTO COVARRUBIAS,
CHRISTIAN BOYD,
PATRICK BOYD,
RUDY HOOPER,
aka "Stephen Hooper,"
ISSA ATRASH,
KHALED AHMAD,
MOHAMMAD MISHAEL,
aka "Michael Mohammed Mishael,"
MUSBAH TARBOUSH,
RUDY BERRERAS,
aka "Rudy Antonio Berreras,"
YASSAR ABDALLAH,
FERNANDO LEON VALLE, and
CARLOS GARCIA AGUAYO,

Defendants.

I hereby attest and certify on JAN 0 9 2001
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEPUTY CLERK

1105

COPY

FILED
CLERK, U.S  DISTRICT COURT

JAN  2 2002

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2001 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KHALIL MOHAMMED,<br> aka "Abu Ashraf,"<br> aka "Mustafa K. Mohamad,"<br> aka "Khalil Al-Tarifi,"<br> aka "Khalil Ashoor,"<br>NIDAL HAMAYEL,<br> aka "Abu Abed,"<br> aka "Nidal Abdelrahman,"<br>MOHAMMAD KAHALAH,<br> aka "Abu Affoun,"<br> aka "Abu Hamaid,"<br> aka "Mohammad Rashid<br>     Tabel Kahalah,"<br> aka "Abu Ahmad,"<br>RAOF ISA,<br> aka "Abu Rafik,"<br> aka "Roaf Isa,"<br>HASHEM HAMIDEH,<br> aka "Abu Yasser,"<br> aka "Hashem Hamedah,"<br>MOHAMMAD SHABIB,<br> aka "Khamis,"<br>OSAMA RAYAN,<br> aka "Abu Ghassan,"<br>AHMAD JARIS,<br> aka "Ahmad Younis," | ) CR NO. 02- 0003<br>)<br>) I N D I C T M E N T<br>)<br>)<br>)<br>) [21 U.S.C. §§ 846, 841(a)(1),<br>) 841(c)(2); 18 U.S.C. § 2:<br>) Conspiracy to (1) Aid and Abet<br>) the Manufacture of<br>) Methamphetamine and (2) Possess<br>) Pseudoephedrine Knowing or<br>) Having Reasonable Cause to<br>) Believe That It Would Be Used<br>) to Manufacture Methamphetamine;<br>) 21 U.S.C. § 841(c)(2):<br>) Possession of Pseudoephedrine<br>) Knowing or Having Reasonable<br>) Cause to Believe That It Would<br>) Be Used to Manufacture<br>) Methamphetamine; 21 U.S.C. §§<br>) 846; 841(a)(1): Attempt to<br>) Manufacture Methamphetamine]<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |



```
 1  NABHAN ISA,
        aka "Mohammad Isa,"
 2      aka "Abu Karam,"                    )
    NASSER HATU,                            )
 3  STEPHEN ALMASRI,                        )
        aka "Abu Yazen,"                    )
 4      aka "Suhail,"                       )
    FERAS SALLAL,                           )
 5  ADNAN ISA,                              )
        aka "Adnan Mohammad Issa,"          )
 6  AKRAM OMAR,                             )
    MOHAMMAD ALASOUD,                       )
 7  ALFONSO PELAYO,                         )
        aka "Neal,"                         )
 8  RASHEED AZIZ,                           )
        aka "Rasheed Abdel-Aziz,"           )
 9      aka "Rasheed Farouk,"               )
        aka "Rasheed Farouq,"               )
10  MAHMOUD KHATTAB,                        )
        aka "Abu Lutfi,"                    )
11      aka "Naseer Khattab,"               )
    KHALED SHOUKHAH,                        )
12  TAWFIQ MUSITEF,                         )
        aka "Tony Musitef,"                 )
13  AMJAD AYEH,                             )
        aka "Amjad Abdelkarim,"             )
14      aka "Khalid,"                       )
    OMAR KHALIL,                            )
15      aka "Omar Hussein Khalil,"          )
    RAHEEF SANAM,                           )
16  MOHAMMAD ESES,                          )
    RIGOBERTO COVARRUBIAS,                  )
17  CHRISTIAN BOYD,                         )
    PATRICK BOYD,                           )
18  RUDY HOOPER,                            )
        aka "Stephen Hooper,"               )
19  ISSA ATRASH,                            )
    KHALED AHMAD,                           )
20  MOHAMMAD MISHAEL,                       )
        aka "Michael Mohammed               )
21         Mishael,"                        )
    MUSBAH TARBOUSH,                        )
22  RUDY BERRERAS,                          )
        aka "Rudy Antonio Berreras,"        )
23  YASSAR ABDALLAH,                        )
    FERNANDO LEON VALLE, and                )
24  CARLOS GARCIA AGUAYO,                   )
                                            )
25                                          )
                                            )
26                      Defendants.         )
                                            )
27
28
```

2

The Grand Jury charges:

COUNT ONE

[21 U.S.C. §§ 846, 841(a)(1), 841(c)(2); 18 U.S.C. § 2]

A.   OBJECTS OF THE CONSPIRACY

As used in this indictment, the term "bottles" of pseudoephedrine generally refers to a bottle which contains 1000 pseudoephedrine pills. "Cases" of pseudoephedrine generally refers to nine 1000-count bottles. Each "case" of pseudoephedrine has a net weight of approximately eight pounds.

Beginning on a date unknown to the Grand Jury and continuing to in or about November 2001, in Riverside, San Bernardino, Orange, and Los Angeles Counties, within the Central District of California, and elsewhere, defendants KHALIL MOHAMMED, aka "Abu Ashraf," aka "Mustafa K. Mohamad," aka "Khalil Al-Tarifi," aka "Khalil Ashoor," NIDAL HAMAYEL, aka "Abu Abed," aka "Nidal Abdelrahman," MOHAMMAD KAHALAH, aka "Abu Affoun," aka "Abu Hamaid," aka "Mohammad Rashid Tabel Kahalah," aka "Abu Ahmad," RAOF ISA, aka "Abu Rafik," aka "Roaf Isa," HASHEM HAMIDEH, aka "Abu Yasser," aka "Hashem Hamedah," MOHAMMAD SHABIB, aka "Khamis," OSAMA RAYAN, aka "Abu Ghassan," AHMAD JARIS, aka "Ahmad Younis," NABHAN ISA, aka "Mohammad Isa," aka "Abu Karam," NASSER HATU, STEPHEN ALMASRI, aka "Abu Yazen," aka "Suhail," FERAS SALLAL, ADNAN ISA, aka "Adnan Mohammad Issa," AKRAM OMAR, MOHAMMAD ALASOUD, ALFONSO PELAYO, aka "Neal," RASHEED AZIZ, aka "Rasheed Abdel-Aziz," aka "Rasheed Farouk," aka "Rasheed Farouq," MAHMOUD KHATTAB, "Abu Lutfi," aka "Naseer Khattab," KHALED SHOUKHAH, TAWFIQ MUSITEF, aka "Tony Musitef," AMJAD AYEH, aka "Amjad Abdelkarim," aka "Khalid," OMAR KHALIL, aka "Omar Hussein

3

1  Khalil," RAHEEF SANAM, MOHAMMAD ESES, RIGOBERTO COVARRUBIAS,
2  CHRISTIAN BOYD, PATRICK BOYD, RUDY HOOPER, aka "Stephen Hooper,"
3  ISSA ATRASH, KHALED AHMAD, MOHAMMAD MISHAEL, aka "Michael
4  Mohammad Mishael," MUSBAH TARBOUSH, RUDY BERRERAS, aka "Rudy
5  Antonio Berreras," YASSAR ABDALLAH, and others known and unknown
6  to the Grand Jury, knowingly and intentionally conspired and
7  agreed with each other to commit the following offenses against
8  the United States:

9       1.   To aid and abet the manufacture of a controlled
10  substance, namely, more than 500 grams of a mixture or substance
11  containing a detectable amount of methamphetamine, a Schedule II
12  controlled substance, in violation of Title 21, United States
13  Code, Section 841(a)(1) and Title 18, United States Code, Section
14  2; and

15       .2.   To possess pseudoephedrine, a list I chemical, knowing
16  and having reasonable cause to believe that the pseudoephedrine
17  would be used to manufacture a controlled substance, namely,
18  methamphetamine, a Schedule II controlled substance, in violation
19  of Title 21, United States Code, Section 841(c)(2).

20  B.  MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
21      ACCOMPLISHED

22       Among other ways, the objects of the conspiracy were to be
23  accomplished in substance as follows:

24       1.   Defendants KHALIL MOHAMMED, NIDAL HAMAYEL, MOHAMMAD
25  KAHALAH, RAOF ISA, HASHEM HAMIDEH, MOHAMMAD SHABIB, OSAMA RAYAN,
26  NABHAN ISA, NASSER HATU, FERAS SALLAL, and OMAR KHALIL would
27  arrange to have pseudoephedrine brought to California and other
28  locations for further distribution to methamphetamine

1  manufacturers.

2      2.    Defendants KHALIL MOHAMMED, NIDAL HAMAYEL, MOHAMMAD

3  KAHALAH, HASHEM HAMIDEH, MOHAMMAD SHABIB, OSAMA RAYAN, AHMAD

4  JARIS, STEPHEN ALMASRI, and MAHMOUD KHATTAB would arrange to have

5  co-conspirators handle the transportation and storage of

6  pseudoephedrine and the "pseudoephedrine for cash" sales.

7      3.    Defendant RAOF ISA, who lived in Chicago, Illinois,

8  would arrange the sale and transportation of pseudoephedrine to

9  distributors in California.

10     4.    Defendants NABHAN ISA and ADNAN ISA, who lived in

11 Chicago, Illinois, would arrange to have their pseudoephedrine

12 customers in California supplied with pseudoephedrine from

13 California distributors and would collect proceeds from the sales

14 of pseudoephedrine.

15     5.    Defendant AKRAM OMAR would store, transport, and

16 distribute pseudoephedrine for defendant HASHEM HAMIDEH.

17     6.    Defendant MOHAMMAD ALASOUD would store and transport

18 pseudoephedrine and would distribute pseudoephedrine to defendant

19 STEPHEN ALMASRI on behalf of an unidentified co-conspirator.

20     7.    Defendant RAHEEF SANAM would purchase pseudoephedrine

21 from defendant KHALIL MOHAMMED in order to distribute it to

22 methamphetamine manufacturers.

23     8.    Defendants TAWFIQ MUSITEF, AMJAD AYEH, ISSA ATRASH, and

24 KHALED AHMAD, would store, transport, and distribute

25 pseudoephedrine for defendant KHALIL MOHAMMED.

26     9.    Defendant KHALED SHOUKHAH would purchase

27 pseudoephedrine from defendants RAOF ISA, MOHAMMAD SHABIB, and

28

5

1  OSAMA RAYAN in order to distribute it to methamphetamine

2  manufacturers.

3      10.  Defendants ALFONSO PELAYO, MAHMOUD KHATTAB, and

4  MOHAMMAD ESES would purchase pseudoephedrine from defendant NIDAL

5  HAMAYEL in order to distribute it to methamphetamine

6  manufacturers.

7      11.  Defendant RASHEED AZIZ would purchase pseudoephedrine

8  from defendant HASHEM HAMIDEH in order to distribute it to

9  methamphetamine manufacturers.

10     12.  Defendant MOHAMMAD MISHAEL would store, transport, and

11  distribute pseudoephedrine for defendant AHMAD JARIS.

12     13.  Defendant MUSBAH TARBOUSH would store, transport, and

13  distribute pseudoephedrine for defendant MAHMOUD KHATTAB.

14     14.  Defendant RIGOBERTO COVARRUBIAS would purchase

15  pseudoephedrine, to be used to manufacture methamphetamine, from

16  a co-conspirator who obtained the pseudoephedrine from defendant

17  MOHAMMAD KAHALAH.

18     15.  Defendants CHRISTIAN BOYD, PATRICK BOYD, and RUDY

19  HOOPER would obtain pseudoephedrine, to be used to manufacture

20  methamphetamine, from defendant RIGOBERTO COVARRUBIAS.

21     16.  Defendant RUDY BERRERAS would purchase pseudoephedrine,

22  to be used to manufacture methamphetamine, from defendant

23  MOHAMMAD KAHALAH.

24     17.  Defendant YASSER ABDALLAH would transport

25  pseudoephedrine he obtained from defendant OSAMA RAYAN.

26  C.  OVERT ACTS

27     In furtherance of the conspiracy and to accomplish the

28  objects of the conspiracy, on or about the dates set forth below,

6

1  defendants KHALIL MOHAMMED, NIDAL HAMAYEL, MOHAMMAD KAHALAH, RAOF
2  ISA, HASHEM HAMIDEH, MOHAMMAD SHABIB, OSAMA RAYAN, AHMAD JARIS,
3  NABHAN ISA, NASSER HATU, STEPHEN ALMASRI, FERAS SALLAL, ADNAN
4  ISA, AKRAM OMAR, MOHAMMAD ALASOUD, ALFONSO PELAYO, RASHEED AZIZ,
5  MAHMOUD KHATTAB, KHALED SHOUKHAH, TAWFIQ MUSITEF, AMJAD AYEH,
6  OMAR KHALIL, RAHEEF SANAM, MOHAMMAD ESES, RIGOBERTO COVARRUBIAS,
7  CHRISTIAN BOYD, PATRICK BOYD, RUDY HOOPER, ISSA ATRASH, KHALED
8  AHMAD, MOHAMMAD MISHAEL, MUSBAH TARBOUSH, RUDY BERRERAS, YASSAR
9  ABDALLAH, and other co-conspirators known and unknown to the
10 Grand Jury, committed various overt acts within the Central
11 District of California and elsewhere, including but not limited
12 to the following:
13      1.   On March 4, 1999, at a storage facility in San
14 Bernardino, California, defendant RAOF ISA possessed
15 approximately 180 cases of pseudoephedrine.
16      2.   On April 17, 2000, defendant RAOF ISA possessed, in a
17 U-Haul truck he was driving in Madison County, Illinois,
18 approximately 170 cases of pseudoephedrine.
19      3.   On May 7, 2000, in Palm Springs, California, defendant
20 MOHAMMAD ESES possessed, for distribution to methamphetamine
21 manufacturers, approximately 20 cases of pseudoephedrine which he
22 purchased from defendant NIDAL HAMAYEL.
23      4.   On June 28, 2000, defendant KHALED SHOUKHAH sold two
24 cases of pseudoephedrine to an unindicted co-conspirator.
25      5.   On August 3, 2000, defendant KHALED SHOUKHAH sold three
26 cases of pseudoephedrine to an unindicted co-conspirator.
27
28

7

6.   On November 2, 2000, defendant KHALED SHOUKHAH possessed approximately $140,000 which represented the proceeds of sales of pseudoephedrine he received from defendant RAOF ISA.

7.   On November 16, 2000, in a telephone conversation using coded language, defendant ALFONSO PELAYO agreed to purchase 26 cases of pseudoephedrine from defendant NIDAL HAMAYEL.

8.   On November 16, 2000, in a telephone conversation using coded language, defendant NIDAL HAMAYEL agreed to purchase 26 cases of pseudoephedrine from defendant MOHAMMAD KAHALAH.

9.   On December 21, 2000, in a telephone conversation using coded language, defendant OMAR KHALIL told defendant MOHAMMAD KAHALAH that he sent defendant KAHALAH 500 cases of pseudoephedrine.

10.   On December 23, 2000, in order to pay defendants OMAR KHALIL and NABHAN ISA for 500 cases of pseudoephedrine, defendants MOHAMMAD KAHALAH and HASHEM HAMIDEH went to the MGM Grand Hotel in Las Vegas, Nevada with a bag of money.

11.   On December 23, 2000, as payment for pseudoephedrine they sold to defendant MOHAMMAD KAHALAH, defendants OMAR KHALIL and NABHAN ISA possessed approximately $154,000 in a hotel room in Las Vegas, Nevada.

12.   On December 24, 2000, in a telephone conversation using coded language, defendant NABHAN ISA told defendant MOHAMMAD KAHALAH that the police seized $154,000 of defendant ISA's money.

13.   On December 24, 2000, in a telephone conversation using coded language, defendant NABHAN ISA told defendant MOHAMMAD KAHALAH that he showed paperwork for the $154,000 seizure to defendant KHALIL MOHAMMED.

8

14. On December 24, 2000, in a telephone conversation using coded language, defendant MOHAMMAD KAHALAH told defendant NABHAN ISA that defendant KHALIL MOHAMMED would help find an attorney to recover the $154,000 that was seized by police.

15. On December 29, 2000, in a telephone conversation using coded language, defendant MOHAMMAD KAHALAH ordered ten cases of pseudoephedrine from defendant OSAMA RAYAN.

16. On December 31, 2000, in a telephone conversation using coded language, defendants KHALIL MOHAMMED and MOHAMMAD KAHALAH discussed the price they charged their customers for pseudoephedrine.

17. On January 3, 2001, in a telephone conversation using coded language, defendant NIDAL HAMAYEL told defendant FERRAS SALLAL that he should sell pseudoephedrine to defendant MAHMOUD KHATTAB.

18. On January 3, 2001, in a telephone conversation using coded language, defendant NIDAL HAMAYEL told defendant FERRAS SALLAL that defendant MOHAMMAD SHABIB brings large amounts of pseudoephedrine to California.

19. On January 3, 2001, in a telephone conversation using coded language, defendant NIDAL HAMAYEL told defendant FERRAS SALLAL that he purchased pseudoephedrine from defendant STEPHEN ALMASRI.

20. On January 3, 2001, in a telephone conversation using coded language, defendant KHALIL MOHAMMED told defendant MOHAMMAD KAHALAH that pseudoephedrine sales were brisk.

21. On January 3, 2001, in a telephone conversation using coded language, defendants KHALIL MOHAMMED and MOHAMMAD KAHALAH

1  discussed how the police became aware that defendant NABHAN ISA

2  possessed $154,000.

3      22.  On January 3, 2001, in a telephone conversation using

4  coded language, defendant KHALIL MOHAMMED told defendant MOHAMMAD

5  KAHALAH that defendant NABHAN ISA may be able to recover a

6  portion of $154,000 that was seized by the police by having

7  defendant NABHAN ISA tell the police the money was a loan from

8  legitimate sources.

9      23.  On January 3, 2001, in a telephone conversation using

10  coded language, defendant NABHAN ISA offered to sell defendant

11  MOHAMMAD KAHALAH 300 cases of pseudoephedrine for $150,000.

12      24.  On January 9, 2001, in a telephone conversation using

13  coded language, defendants MOHAMMAD KAHALAH and RAOF ISA

14  discussed prices involved in pseudoephedrine transactions they

15  had previously conducted.

16      25.  On January 9, 2001, in a telephone conversation using

17  coded language, defendant MOHAMMAD KAHALAH ordered 10 cases of

18  pseudoephedrine from defendant OSAMA RAYAN.

19      26.  On January 10, 2001, in a telephone conversation using

20  coded language, defendant MAHMOUD KHATTAB ordered 100 cases of

21  pseudoephedrine from defendant NIDAL HAMAYEL.

22      27.  On January 10, 2001, defendants NIDAL HAMAYEL and

23  MAHMOUD KHATTAB met at a McDonald's restaurant in Fontana,

24  California to negotiate the terms of a pseudoephedrine sale.

25      28.  On January 10, 2001, in a telephone conversation using

26  coded language, defendant NIDAL HAMAYEL ordered 100 cases of

27  pseudoephedrine from defendant HASHEM HAMIDEH.

28

29. On January 10, 2001, acting at the direction of defendant HASHEM HAMIDEH, defendant AKRAM OMAR delivered a vehicle that contained pseudoephedrine to a parking lot at a Burger King restaurant in Rialto, California.

30. On January 10, 2001, acting at the direction of defendant MAHMOUD KHATTAB, defendant MUSBAH TARBOUSH took possession of a vehicle loaded with pseudoephedrine that was left in the parking lot of a Burger King restaurant in Rialto, California.

31. On January 10, 2001, acting at the direction of defendant MAHMOUD KHATTAB, defendant MUSBAH TARBOUSH conducted countersurveillance driving while transporting a vehicle loaded with pseudoephedrine to a storage locker in Fontana, California.

32. On January 10, 2001, acting at the direction of defendant MAHMOUD KHATTAB, defendant MUSBAH TARBOUSH unloaded cases of pseudoephedrine from a vehicle into a storage locker in Fontana, California.

33. On January 11, 2001, acting at the direction of defendant MAHMOUD KHATTAB, defendant MUSBAH TARBOUSH loaded approximately 100 cases of pseudoephedrine into a vehicle from a storage locker he filled with pseudoephedrine the previous day.

34. On January 12, 2001, in a telephone conversation using coded language, defendant MAHMOUD KHATTAB ordered 40 cases of pseudoephedrine from defendant NIDAL HAMAYEL.

35. On January 13, 2001, in a telephone conversation using coded language, defendant NIDAL HAMAYEL negotiated the purchase of 40 cases of pseudoephedrine from defendant AHMAD JARIS which he intended to sell to defendant MAHMOUD KHATTAB.

11

36.  On January 13, 2001, while meeting in the parking lot of an El Torito restaurant in Buena Park, California, defendant AHMAD JARIS displayed pseudoephedrine, that was in the trunk of his vehicle and available for sale, to defendant NIDAL HAMAYEL.

37.  On January 13, 2001, while in the parking lot of a Motel 6 in Santa Fe Springs, California, defendant AHMAD JARIS transferred pseudoephedrine from his vehicle to the vehicle of an unindicted co-conspirator working for defendant MAHMOUD KHATTAB.

38.  On January 13, 2001, in a telephone conversation using coded language, defendant NIDAL HAMAYEL attempted to collect money that defendant MAHMOUD KHATTAB owed for the purchase of pseudoephedrine.

39.  On January 13, 2001, in a telephone conversation using coded language, defendant MOHAMMAD KAHALAH ordered 12 cases of pseudoephedrine from defendant OSAMA RAYAN for a transaction that was scheduled to take place in the parking lot of a Mr. Kebob restaurant in Riverside, California.

40.  On January 13, 2001, in a telephone conversation using coded language, defendant MOHAMMAD KAHALAH told defendant OSAMA RAYAN to have his pseudoephedrine courier park his vehicle in the Mr. Kebob parking lot next to a gold Honda, which was the vehicle of defendant KAHALAHA's customer.

41.  On January 13, 2001, acting at the direction of defendant OSAMA RAYAN, an unindicted co-conspirator loaded cases of pseudoephedrine into a gold Honda which was parked in the parking lot of a Mr. Kebob restaurant in Riverside, California.

12

42. On January 15, 2001, in a telephone conversation using coded language, defendant ALFONSO PELAYO ordered 28 cases of pseudoephedrine from defendant NIDAL HAMAYEL.

43. On January 15, 2001, in a telephone conversation using coded language, defendant NIDAL HAMAYEL ordered 28 cases of pseudoephedrine from defendant AHMAD JARIS.

44. On January 16, 2001, defendants AHMAD JARIS and MOHAMMAD MISHAEL loaded cases of pseudoephedrine from a storage locker in Norco, California into a vehicle.

45. On January 16, 2001, defendants AHMAD JARIS and MOHAMMAD MISHAEL drove to the parking lot of a shopping mall in Riverside, California with pseudoephedrine in their vehicle.

46. On January 16, 2001, acting on behalf of defendant NIDAL HAMAYEL, defendants AHMAD JARIS and MOHAMMAD MISHAEL supplied defendant ALFONSO PELAYO with 28 cases of pseudoephedrine in the parking lot of a shopping mall in Riverside, California.

47. On January 16, 2001, in a telephone conversation using coded language, defendants ALFONSO PELAYO and NIDAL HAMAYEL discussed how payment would be made for the pseudoephedrine transaction that took place earlier that day.

48. On January 17, 2001, after detecting that he was under police surveillance, defendant AHMAD JARIS dumped several boxes of pseudoephedrine in an alley behind a restaurant in Norwalk, California.

49. On January 29, 2001, in a telephone conversation using coded language, defendant OSAMA RAYAN agreed to sell 42 cases of pseudoephedrine to defendant ADNAN ISA.

13

50. On January 29, 2001, in a telephone conversation using coded language and acting at the direction of defendant ADNAN ISA, defendant YASSER ABDALLAH discussed an upcoming pseudoephedrine transaction with an unindicted co-conspirator who was working for defendant OSAMA RAYAN.

51. On January 30, 2001, acting at the direction of defendant ADNAN ISA, defendant YASSER ABDALLAH gave defendant OSAMA RAYAN two filled backpacks at his residence in San Bernardino, California.

52. On January 30, 2001, in San Bernardino, California, after receiving two filled backpacks from defendant YASSER ABDALLAH, defendant OSAMA RAYAN loaded ABDALLAH's vehicle with 40 cases of pseudoephedrine.

53. On January 30, 2001, in a telephone conversation using coded language, YASSER ABDALLAH discussed with an unindicted co-conspirator whether he was under police surveillance.

54. On January 30, 2001, in Ontario, California, after being informed that his vehicle may be under police surveillance, defendant YASSER ABDALLAH abandoned the vehicle he was driving which contained approximately 40 cases of pseudoephedrine.

55. On February 1, 2001, in a telephone conversation using coded language, defendant NASSAR HATU arranged to sell approximately 500 cases of pseudoephedrine to defendant KHALIL MOHAMMED in Las Vegas, Nevada.

56. On February 2, 2001, acting at the direction of defendant KHALIL MOHAMMED, defendant AMJAD AYEH possessed more than $199,000 in cash as he drove to the MGM Grand Hotel in Las Vegas, Nevada to purchase pseudoephedrine.

14

57. On February 2, 2001, in a telephone conversation using coded language, defendant AMJAD AYEH told defendant KHALIL MOHAMMED that $200,000 was seized by the police and the remainder of the money was hidden well.

58. On February 2, 2001, in a telephone conversation using coded language, defendant KHALIL MOHAMMED cancelled a pseudoephedrine transaction with defendant NASSER HATU that was scheduled to take place in Las Vegas, Nevada.

59. On February 6, 2001, in a telephone conversation using coded language, defendant ALFONSO PELAYO ordered 28 cases of pseudoephedrine from defendant NIDAL HAMAYEL.

60. On February 6, 2001, in a telephone conversation using coded language, defendant NIDAL HAMAYEL ordered 28 cases of pseudoephedrine from defendant STEPHEN ALMASRI.

61. On February 8, 2001, defendants NIDAL HAMAYEL and STEPHEN ALMASRI sold defendant ALFONSO PELAYO 28 cases of pseudoephedrine in the parking lot of a shopping mall in Riverside, California.

62. On February 8, 2001, in Riverside, California, defendant ALFONSO PELAYO possessed 28 cases of pseudoephedrine and approximately $3,000 of proceeds derived from pseudoephedrine trafficking.

63. On February 8, 2001, in a telephone conversation using coded language, defendant RAHEEF SANAM ordered 40 cases of pseudoephedrine from defendant KHALIL MOHAMMED.

64. On February 8, 2001, in a telephone conversation using coded language, defendant KHALIL MOHAMMED directed defendants

15

1  ISSA ATRASH and KHALED AHMAD to sell pseudoephedrine to defendant

2  RAHEEF SANAM.

3      65. On February 8, 2001, acting at the direction of

4  defendant KHALIL MOHAMMED, defendants ISSA ATRASH and KHALED

5  AHMAD sold seven cases of pseudoephedrine to a customer of

6  defendant RAHEEF SANAM in the parking lot of a market in Ontario,

7  California.

8      66. On February 8, 2001, acting on behalf of defendant

9  KHALIL MOHAMMED, defendant KHALED AHMAD possessed approximately

10 33 cases of pseudoephedrine when it was seized by law enforcement

11 officers in the parking lot of a liquor store in Ontario,

12 California.

13     67. On February 8, 2001, in a telephone conversation using

14 coded language, defendant ISSA ATRASH told defendant KHALIL

15 MOHAMMED that defendant MOHAMMED's pseudoephedrine had been

16 seized by the police.

17     68. On February 8, 2001, in a telephone conversation using

18 coded language that took place after he learned that police

19 seized 33 cases of his pseudoephedrine, defendant KHALIL MOHAMMED

20 directed an unindicted co-conspirator to "hide" everything,

21 including weapons.

22     69. On February 8, 2001, in a telephone conversation using

23 coded language shortly after police seized his pseudoephedrine,

24 defendant KHALIL MOHAMMED accused defendant RAHEEF SANAM and

25 SANAM's customers of cooperating with the police.

26     70. On February 14, 2001, in a telephone conversation using

27 coded language, defendants KHALIL MOHAMMED and MOHAMMAD SHABIB

28

16

1 discussed details relating to future pseudoephedrine

2 transactions.

3    71.  On February 14, 2001, in a telephone conversation using

4 coded language, defendant MOHAMMAD SHABIB told defendant KHALIL

5 MOHAMMAD that he sent approximately 1800 pounds of  *seized by government*

6 pseudoephedrine to Burbank, California.

7    72.  On February 15, 2001, in a telephone conversation using

8 coded language, defendant FERAS SALLAL offered to sell

9 pseudoephedrine to defendant NIDAL HAMAYEL.

10   73.  On February 15, 2001, in a telephone conversation using

11 coded language, defendant NIDAL HAMAYEL told defendant FERRAS

12 SALLAL to be careful because police were arresting many

13 pseudoephedrine traffickers.

14   74.  On February 20, 2001, defendant KHALIL MOHAMMED

15 contacted a shipping company by telephone to check on the arrival

16 date of 1000 cases of pseudoephedrine he shipped from Chicago,

17 Illinois to the Central District of California.

18   75.  On February 21, 2001, in a telephone conversation using

19 coded language, defendant MOHAMMAD KAHALAH agreed to sell

20 pseudoephedrine to an unindicted co-conspirator.

21   76.  On February 21, 2001, in a telephone conversation using

22 coded language, defendant HASHEM HAMIDEH agreed to sell

23 approximately 21 cases of pseudoephedrine to defendant MOHAMMAD

24 KAHALAH.

25   77.  On February 21, 2001, in a telephone conversation using

26 coded language, defendant MOHAMMAD KAHALAH told defendant HASHEM

27 HAMIDEH that defendant KAHALAH's customer was waiting for the

28

1  pseudoephedrine in the parking lot of the Kan Zaman Café in

2  Riverside, California.

3      78.  On February 21, 2001, in a telephone conversation using

4  coded language, defendant HASHEM HAMIDEH told defendant MOHAMMAD

5  KAHALAH that he would send a courier to deliver pseudoephedrine

6  to one of defendant KAHALAH's customers.

7      79.  On February 23, 2001, at a truck stop in Hesperia,

8  California, defendant FERAS SALLAL met with an unindicted

9  co-conspirator who possessed approximately 230 boxes of

10 pseudoephedrine.

11     80.  On February 23, 2001, in Hesperia, California,

12 defendant FERAS SALLAL possessed approximately $324,000 in cash

13 to purchase pseudoephedrine.

14     81.  On February 23, 2001, defendant FERAS SALLAL possessed

15 a cell phone that had contact with phone numbers used by

16 defendants NIDAL HAMAYEL and MOHAMMAD SHABIB.

17     82.  On February 23, 2001, in a telephone conversation using

18 coded language, defendant MOHAMMAD KAHALAH arranged to sell

19 defendant RUDY BERRERAS pseudoephedrine that was to be supplied

20 by defendant HASHEM HAMIDEH.

21     83.  On February 23, 2001, acting on behalf of defendant

22 HASHEM HAMIDEH, an unidentified co-conspirator loaded six cases

23 of pseudoephedrine into a gray Chevrolet Caprice, which was

24 located in the parking lot of the Kan Zaman Café in Riverside,

25 California.

26     84.  On February 23, 2001, defendant RUDY BERRERAS drove the

27 gray Chevrolet Caprice, loaded with six cases of pseudoephedrine,

28

18

1  to a mobile home in Pedley, California, which contained materials

2  used to manufacture methamphetamine.

3      85.  On February 28, 2001, an unindicted co-conspirator sent

4  defendant MOHAMMAD SHABIB more than $80,000 in money orders,

5  which represented the proceeds from sales of pseudoephedrine

6  supplied by defendant SHABIB earlier in the month.

7      86.  On February 28, 2001, at the direction of defendant

8  KHALIL MOHAMMED, defendants TAWFIQ MUSITEF, AMJAD AYEH, and ISSA

9  ATRASH attempted to take delivery of approximately 1000 cases of

10 pseudoephedrine that was being trucked from Chicago to

11 California.

12     87.  On February 28, 2001, in a telephone conversation using

13 coded language, defendant RAHEEF SANAM agreed to purchase a

14 portion of the pseudoephedrine shipment that defendant KHALIL

15 MOHAMMED anticipated receiving that day.

16     88.  On February 28, 2001, at the direction of defendant

17 KHALIL MOHAMMED, defendants TAWFIQ MUSITEF and AMJAD AYEH

18 directed an undercover law enforcement officer (posing as a truck

19 driver) to follow them to a location where they wanted the

20 truckload of pseudoephedrine delivered.

21     89.  On February 28, 2001, in a telephone conversation using

22 coded language, defendant AMJAD AYEH informed defendant KHALIL

23 MOHAMMED that his truckload of pseudoephedrine was stopped by

24 police on its way to the delivery location.

25     90.  On February 28, 2001, in a telephone conversation using

26 coded language, defendant ISSA ATRASH informed defendant KHALIL

27 MOHAMMED that the truckload of pseudoephedrine was seized by

28 police.

19

91. On March 1, 2001, in a telephone conversation using coded language, defendant NIDAL HAMAYEL ordered 100 cases of pseudoephedrine from defendant RAOF ISA.

92. On March 2, 2001, in a telephone conversation, defendant KHALIL MOHAMMED threatened to kill the truck driver unless the driver could prove that he was not involved in the seizure of defendant MOHAMMAD's pseudoephedrine.

93. On or before March 23, 2001, defendant MOHAMMAD ALASOUD rented a storage locker in Mira Loma, California to store pseudoephedrine.

94. On March 23, 2001, defendant MOHAMMAD ALASOUD drove a U-Haul truck containing 256 cases of pseudoephedrine from a storage locker in Mira Loma, California to a hotel parking lot in Ontario, California.

95. On March 23, 2001, in Ontario, California, defendant MOHAMMAD ALASOUD supplied defendant STEPHEN ALMASRI with approximately 256 cases of pseudoephedrine contained in a U-Haul truck.

96. On March 23, 2001, defendant STEPHEN ALMASRI drove approximately 256 cases of pseudoephedrine to a storage locker in Rancho Cucamonga, California.

97. On April 5, 2001, in a telephone conversation using coded language, defendants HASHEM HAMIDEH and MOHAMMAD SHABIB negotiated a pseudoephedrine transaction.

98. On April 5, 2001, in a telephone conversation using coded language, defendant MOHAMMAD SHABIB informed defendant HASHEM HAMIDEH that he purchased pseudoephedrine in Canada and shipped it to California.

20

99. On April 5, 2001, in a telephone conversation using coded language, defendants HASHEM HAMIDEH and MOHAMMAD SHABIB discussed paying a lawyer $25,000 to bribe a district attorney in order to ensure that a courier for the organization who was arrested would receive probation.

100. On April 11, 2001, in a telephone conversation using coded language, defendant RASHEED AZIZ ordered approximately 38 cases of pseudoephedrine from defendant HASHEM HAMIDEH.

101. On April 18, 2001, in a telephone conversation using coded language, defendant MOHAMMAD KAHALAH ordered 11 cases of pseudoephedrine from defendant HASHEM HAMIDEH.

102. On April 18, 2001, acting on behalf of defendant HASHEM HAMIDEH, defendant AKRAM OMAR delivered approximately 11 cases of pseudoephedrine to an unindicted co-conspirator in the parking lot of a liquor store in Norco, California.

103. On April 18, 2001, defendant RIGOBERTO COVARRUBIAS took possession of pseudoephedrine that had earlier been distributed by defendant AKRAM OMAR.

104. On April 19, 2001, defendant RIGOBERTO COVARRUBIAS delivered multiple cases of pseudoephedrine, as well as other items used to manufacture methamphetamine, to an active methamphetamine laboratory in Pinon Hills, California.

105. On April 19, 2001, defendants CHRISTIAN BOYD, PATRICK BOYD, and RUDY HOOPER operated an active methamphetamine laboratory in Pinon Hills, California.

106. On April 20, 2001, in a telephone conversation using coded language, an unindicted co-conspirator working on behalf of

21

1 defendant MOHAMMAD SHABIB agreed to deliver 50 cases of

2 pseudoephedrine to defendant HASHEM HAMIDEH.

3     107. On April 21, 2001, defendant HASHEM HAMIDEH gave an

4 unindicted co-conspirator approximately $119,000 to pay defendant

5 MOHAMMAD SHABIB for pseudoephedrine he purchased from SHABIB the

6 previous day.

7     108. On April 21, 2001, in a telephone conversation using

8 coded language, defendants HASHEM HAMIDEH and MOHAMMAD SHABIB

9 discussed the sale of 50 cases of pseudoephedrine that occurred

10 the previous day.

11     109. On April 23, 2001, at the direction of defendant KHALIL

12 MOHAMMED, defendants TAWFIQ MUSITEF and AMJAD AYEH stored

13 pseudoephedrine in a storage locker in Barstow, California.

14     110. On April 23, 2001, acting on behalf of KHALIL MOHAMMED,

15 defendants TAWFIQ MUSITEF and AMJAD AYEH delivered approximately

16 800 cases of pseudoephedrine to defendant MUSITEF's residence in

17 Barstow, California.

18     111. On April 25, 2001, in a telephone conversation using

19 coded language, defendant RASHEED AZIZ agreed to purchase 40.5

20 cases of pseudoephedrine from defendant HASHEM HAMIDEH.

21     112. On April 26, 2001, at the direction of defendant HASHEM

22 HAMIDEH, defendant AKRAM OMAR left a car containing

23 pseudoephedrine in the parking lot of a Jack in the Box

24 restaurant in Diamond Bar, California.

25     113. On April 26, 2001, in a telephone conversation using

26 coded language, defendant RASHEED AZIZ arranged for an unindicted

27 co-conspirator to accept delivery of a vehicle that was loaded

28

1 with pseudoephedrine and left in the parking lot of a Jack in the
2 Box restaurant in Diamond Bar, California.

3     114. On April 27, 2001, in a telephone conversation using
4 coded language, defendant KHALIL MOHAMMED, referring to the
5 seizure of 800 cases of pseudoephedrine from defendant TAWFIQ
6 MUSITEF's residence, complained to defendant ISSA ATRASH that
7 someone had "snitched" on him and that law enforcement seized
8 everything.

9     115. On April 27, 2001, in a telephone conversation using
10 coded language, defendant KHALIL MOHAMMED directed defendant ISSA
11 ATRASH to hide all the pseudoephedrine that was not taken in a
12 recent seizure by law enforcement.

13     116. On May 9, 2001, defendant MOHAMMAD SHABIB directed an
14 unindicted co-conspirator to transport more than 600 cases of
15 pseudoephedrine from Canada to Chicago, Illinois, on its way to
16 California.

17     117. On May 17, 2001, acting on behalf of defendant HASHEM
18 HAMIDEH, defendant AKRAM OMAR delivered approximately 48 cases of
19 pseudoephedrine to an unindicted co-conspirator, in Fontana,
20 California, who abandoned her car and the pseudoephedrine after
21 detecting that she was being watched by law enforcement officers.

22     118. On June 10, 2001, at a hotel in Norwalk, California,
23 defendant RAOF ISA possessed approximately $404,000 of cash and a
24 gold brick, which were proceeds from pseudoephedrine trafficking.

25     119. On June 23, 2001, in coded telephone conversations with
26 an unindicted co-conspirator, defendant HASHEM HAMIDEH brokered a
27 40-case pseudoephedrine transaction between defendant KHALIL

28

1  MOHAMMED, who supplied the pseudoephedrine, and the unindicted

2  co-conspirator.

3      120. In August, 2001, defendant KHALED SHOUKHAH ordered 200

4  cases of pseudoephedrine from defendant MOHAMMAD SHABIB.

24

## COUNT TWO

### [21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about May 7, 2000, in Riverside County, within the Central District of California, defendants NIDAL HAMAYAL, aka "Abu Abed," aka "Nidal Abdelrahman," and MOHAMMAD ESES, aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

25

COUNT THREE

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about November 16, 2000, in Riverside County, within the Central District of California, defendants NIDAL HAMAYAL, aka "Abu Abed," aka "Nidal Abdelrahman," MOHAMMAD KAHALAH, aka "Abu Affoun," aka "Abu Hamaid," aka "Mohammad Rashid Tabel Kahalah," aka "Abu Ahmad," and ALFONSO PELAYO, aka "Neal," aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

26

COUNT FOUR

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about December 21, 2000, in Riverside County, within the Central District of California, defendants MOHAMMAD KAHALAH, aka "Abu Affoun," aka "Abu Hamaid," aka "Mohammad Rashid Tabel Kahalah," aka "Abu Ahmad," NABHAN ISA, aka "Mohammad Isa," aka "Abu Karam," and OMAR KHALIL, aka "Omar Hussein Khalil," aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

27

## COUNT FIVE

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about January 10, 2001, in San Bernardino County, within the Central District of California, defendants NIDAL HAMAYEL, aka "Abu Abed," aka "Nidal Abdelrahman," HASHEM HAMIDEH, aka "Abu Yasser," aka "Hashem Hamedah," AKRAM OMAR, MAHMOUD KHATTAB, "Abu Lutfi," aka "Naseer Khattab," and MUSBAH TARBOUSH, aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

28

COUNT SIX

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about January 13, 2001, in Riverside County, within the Central District of California, defendants NIDAL HAMAYEL, aka "Abu Abed," aka "Nidal Abdelrahman," MOHAMMAD KAHALAH, aka "Abu Affoun," aka "Abu Hamaid," aka "Mohammad Rashid Tabel Kahalah," aka "Abu Ahmad," AHMAD JARIS, aka "Ahmad Younis," and MAHMOUD KHATTAB, aka "Abu Lutfi," aka "Naseer Khattab," aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudosphedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

29

COUNT SEVEN

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about January 13, 2001, in Riverside County, within the Central District of California, defendants MOHAMMAD KAHALAH, aka "Abu Affoun," aka "Abu Hamaid," aka "Mohammad Rashid Tabel Kahalah," aka "Abu Ahmad," and OSAMA RAYAN, aka "Abu Ghassan," aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

30

COUNT EIGHT

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about January 16, 2001, in Riverside County, within the Central District of California, defendants NIDAL HAMAYEL, aka "Abu Abed," aka "Nidal Abdelrahman," AHMAD JARIS, aka "Ahmad Younis," ALFONSO PELAYO, aka "Neal," and MOHAMMAD MISHAEL, aka "Michael Mohammad Mishael," aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

31

## COUNT NINE

### [21 U.S.C. § 841(c)(2)]

On or about January 17, 2001, in Los Angeles County, within the Central District of California, defendant AHMAD JARIS, aka "Ahmad Younis," knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

32

COUNT TEN

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about January 30, 2001, in San Bernardino County, within the Central District of California, defendants OSAMA RAYAN, aka "Abu Ghassan," ADNAN ISA, aka "Adnan Mohammad Issa," and YASSAR ABDALLAH, aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

33

1

## COUNT ELEVEN

2

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

3      On or about February 8, 2001, in Riverside County, within

4  the Central District of California, defendants NIDAL HAMAYEL, aka

5  "Abu Abed," aka "Nidal Abdelrahman," STEPHEN ALMASRI, aka "Abu

6  Yazen," aka "Suhail," and ALFONSO PELAYO, aka "Neal," aiding and

7  abetting each other, knowingly and intentionally possessed

8  pseudoephedrine, a list I chemical, knowing and having reasonable

9  cause to believe that the pseudoephedrine would be used to

10  manufacture a controlled substance, namely, methamphetamine, a

11  Schedule II controlled substance.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34

COUNT TWELVE

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about February 9, 2001, in San Bernardino County, within the Central District of California, defendants KHALIL MOHAMMED, aka "Abu Ashraf," aka "Mustafa K. Mohamad," aka "Khalil Al-Tarifi," "Khalil Ashoor," RAHEEF SANAM, ISSA ATRASH, and KHALED AHMAD, aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

## COUNT THIRTEEN

### [21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about February 21, 2001, in San Bernardino County, within the Central District of California, defendants MOHAMMAD KAHALAH, aka "Abu Affoun," aka "Abu Hamaid," aka "Mohammad Rashid Tabel Kahalah," aka "Abu Ahmad," and HASHEM HAMIDEH, aka "Abu Yasser," aka "Hashem Hamedah," aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

36

COUNT FOURTEEN

[21 U.S.C. § 841(c)(2)]

On or about February 23, 2001, in Riverside County, within the Central District of California, defendant RUDY BERRERAS, aka "Rudy Antonio Berreras," knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

37

COUNT FIFTEEN

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about February 28, 2001, in San Bernardino County, within the Central District of California, defendants KHALIL MOHAMMED, aka "Abu Ashraf," aka "Mustafa K. Mohamad," aka "Khalil Al-Tarifi," aka "Khalil Ashoor," TAWFIQ MUSITEF, aka "Tony Musitef," AMJAD AYEH, aka "Amjad Abdelkarim," and ISSA ATRASH, aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

## COUNT SIXTEEN

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about March 23, 2001, in Riverside County, within the Central District of California, defendants STEPHEN ALMASRI, aka "Abu Yazen," aka "Suhail," and MOHAMMAD ALASOUD, aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

39

## COUNT SEVENTEEN

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about April 18, 2001, in San Bernardino County, within the Central District of California, defendants MOHAMMAD KAHALAH, aka "Abu Affoun," aka "Abu Hamaid," aka "Mohammad Rashid Tabel Kahalah," aka "Abu Ahmad," HASHEM HAMIDEH, aka "Abu Yasser," aka "Hashem Hamedah," and AKRAM OMAR, aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

40

## COUNT EIGHTEEN

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about April 19, 2001, in San Bernardino County, within the Central District of California, defendants RIGOBERTO COVARRUBIAS, CHRISTIAN BOYD, PATRICK BOYD, and RUDY HOOPER, aka "Stephen Hooper," aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

COUNT NINETEEN

[21 U.S.C. §§ 846, 841(a)(1)]

On or about April 19, 2001, in San Bernardino County, within the Central District of California, defendants RIGOBERTO COVARRUBIAS, CHRISTIAN BOYD, PATRICK BOYD, and RUDY HOOPER, "aka Stephen Hooper," did knowingly and intentionally attempt to manufacture a controlled substance, namely, more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

42

COUNT TWENTY

(21 U.S.C. § 841(c)(2); 18 U.S.C. § 2)

On or about April 23, 2001, in San Bernardino County, within

the Central District of California, defendants KHALIL MOHAMMED,

aka "Abu Ashraf," aka "Mustafa K. Mohamad," aka "Khalil Al-

Tarifi," "Khalil Asheer," TAWFIQ MUSITEF, aka "Tony Musitef," and

AMJAD AYEH, aka "Amjad Abdelkarim," aka "Khalid," aiding and

abetting each other, knowingly and intentionally possessed

pseudoephedrine, a list I chemical, knowing and having reasonable

cause to believe that the pseudoephedrine would be used to

manufacture a controlled substance, namely, methamphetamine, a

Schedule II controlled substance.

43

## COUNT TWENTY-ONE

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about April 26, 2001, in Riverside and Los Angeles Counties, within the Central District of California, defendants HASHEM HAMIDEH, aka "Abu Yasser," aka "Hashem Hamadah," AKRAM OMAR, and RASHEED AZIZ, aka "Rasheed Abdel-Aziz," aka "Rasheed Farouk," aka "Rasheed Farouq," aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

44

## COUNT TWENTY-TWO

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about May 17, 2001, in Riverside County, within the Central District of California, defendants HASHEEM HAMIDEH, aka "Abu Yasser," aka "Hashem Hamedah," and AKRAM OMAR, aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

45

## COUNT TWENTY-THREE

[21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about June 23, 2001, in Riverside County, within the Central District of California, and elsewhere, defendants KHALIL MOHAMMED, aka "Abu Ashraf," aka "Mustafa K. Mohamad," aka "Khalil Al-Tarifi," aka "Khalil Ashoor," and HASHEEM HAMIDEH, aka "Abu Yasser," aka "Hashem Hamedah," aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

46

COUNT TWENTY-FOUR

[21 U.S.C. §§ 846, 841(a)(1), 841(c)(2); 18 U.S.C. § 2]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury and continuing to on or about February 14, 2001, San Bernardino County, within the Central District of California, and elsewhere, defendants STEPHEN ALMASRI, aka "Abu Yazen," aka "Suhail," FERNANDO LEON VALLE, and CARLOS GARCIA AGUAYO and others known and unknown to the Grand Jury, knowingly and intentionally conspired and agreed with each other to commit the following offenses against the United States:

1.   To aid and abet the manufacture of a controlled substance, namely, more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2; and

2.   To possess pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(c)(2).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

Among other ways, the objects of the conspiracy were to be accomplished in substance as follows:

1.   Defendant STEPHEN ALMASRI would sell pseudoephedrine to defendants FERNANDO LEON VALLE and CARLOS GARCIA AGUAYO, knowing

47

1  the pseudoephedrine was intended to be used to manufacture

2  methamphetamine.

3    2.   Defendants FERNANDO LEON VALLE and CARLOS GARCIA AGUAYO

4  would purchase pseudoephedrine from defendant STEPHEN ALMASRI

5  knowing it would be used to manufacture methamphetamine.

6  C.   OVERT ACTS

7    In furtherance of the conspiracy and to accomplish the

8  objects of the conspiracy, on or about February 14, 2001,

9  defendants STEPHEN ALMASRI, aka "Abu Yazen," aka "Suhail,"

10  FERNANDO LEON VALLE, and CARLOS GARCIA AGUAYO and other co-

11  conspirators known and unknown to the Grand Jury, committed

12  various overt acts within the Central District of California and

13  elsewhere, including but not limited to the following:

14    1.   Acting at the direction of defendant STEPHEN ALMASRI,

15  an unindicted co-conspirator loaded approximately 55 cases of

16  pseudoephedrine from a storage locker in Rancho Cucamonga,

17  California into a maroon Mercury Cougar.

18    2.   Acting at the direction of defendant STEPHEN ALMASRI,

19  an unindicted co-conspirator drove a maroon Mercury Cougar filled

20  with approximately 55 cases of pseudoephedrine to the parking lot

21  of a Denny's restaurant in Ontario, California.

22    3.   After swapping vehicles with the driver of the maroon

23  Mercury Cougar in the parking lot of a Denny's restaurant in

24  Ontario, California, defendant CARLOS GARCIA AGUAYO drove

25  approximately 55 cases of pseudoephedrine to a house in Ontario,

26  California.

27    4.   Defendants FERNANDO LEON VALLE and CARLOS GARCIA AGUAYO

28  unloaded approximately 55 cases of pseudoephedrine from the

48

1  maroon Mercury Cougar into the garage of a house in Ontario,

2  California in which they both resided.

3      5.  Defendants FERNANDO LEON VALLE and CARLOS GARCIA AGUAYO

4  were transporting approximately 25 cases of pseudoephedrine from

5  their residence in Ontario, California to an unknown location

6  when their vehicle was stopped by law enforcement officers.

7      6.  Defendants FERNANDO LEON VALLE and CARLOS GARCIA AGUAYO

8  possessed, at their residence in Ontario, California,

9  approximately 30 cases of pseudoephedrine, approximately 90 grams

10  of methamphetamine, a gram scale, a firearm, and approximately

11  $15,000 in cash.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COUNT TWENTY-FIVE

## [21 U.S.C. § 841(c)(2); 18 U.S.C. § 2]

On or about February 14, 2001, in San Bernardino County, within the Central District of California, and elsewhere, defendants STEPHEN ALMASRI, aka "Abu Yazen," aka "Suhail," FERNANDO LEON VALLE, and CARLOS GARCIA AGUAYO, aiding and abetting each other, knowingly and intentionally possessed pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

A TRUE BILL

_____
Foreperson

JOHN S. GORDON
United States Attorney

GREGORY J. WEINGART
Assistant United States Attorney
Acting Chief, Criminal Division

MICHAEL TERRELL
Assistant United States Attorney
Chief, Narcotics Section

50